UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANABEL DURAN DELEON,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:19-cv-01687-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY** |

**I.     Introduction**

Plaintiff Anabel Duran Deleon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act.  The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 20, 22, 23.  After reviewing the record, the Court finds that substantial evidence and applicable law do not support the ALJ's decision.  Accordingly, Plaintiff's appeal is granted.

**II.    Procedural Background**

On September 2, 2015 Plaintiff filed an application for disability insurance benefits and supplemental security income claiming disability beginning January 7, 2014.  AR 81.  Plaintiff claimed swollen feet, liver tumor, cirrhosis, and chronic pain.  AR 81.  The Commissioner denied the application initially on November 13, 2015, and on reconsideration on April 5, 2016.  AR 117, 130.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 8.

"ALJ") on August 21, 2018. AR 40–59. Plaintiff was represented by counsel at the hearing. AR 40–59. On November 13, 2018, the ALJ issued a decision denying Plaintiff's application. AR 15–33. The Appeals Council denied review on September 27, 2019. AR 1–8. On December 2, 2019, Plaintiff filed a complaint in this Court. Doc. 1.

### III. Factual Background

#### A. Plaintiff's Testimony

Although an interpreter was used at the hearing, Plaintiff's responses were often non-responsive to questions asked by the ALJ and by her attorney. Plaintiff testified that she lived with her husband. AR 44. He drove her to her appointments. AR 45. Plaintiff did not drive. AR 45. Her daughter helped her bathe. AR 46. Plaintiff did some chores but did not cook. AR 46. She went to church but otherwise didn't go out because she tended to fall. AR 46. Her daughter came over to visit her daily. AR 47. Plaintiff did not acknowledge her previous employment as a fruit sorter during the hearing, but her attorney did. AR 50. She had back pain which ran down her legs. AR 52. She had pain and numbness in her hands. AR 53. She had constant foot pain. AR 53. She used a splint for her hands. AR 54. She could occasionally lift a gallon of milk, but sometimes spilled it due to hand trembling. AR 54. She could do dishes while seated. AR 55.

#### B. Medical Opinions

On February 1, 2018 Plaintiff's gastroenterologist, Dr. Sheikh, completed a medical source statement diagnosing alcoholic cirrhosis complicated by fluid overload and mild hepatic encephalopathy with fatigue. AR 1156. He described the condition as end stage liver disease. AR 1158. He described Plaintiff's prognosis as poor without liver transplantation. AR 1156. He identified symptoms of fatigue, joint pain, and mental confusion. AR 1156. As to clinical findings and objective signs he identified imaging studies and clinical exams supporting cirrhosis. AR 1156. Dr. Sheikh opined that Plaintiff could walk less than one block, sit for one consecutive hour, stand for 45 consecutive minutes, sit and stand/walk for less than two hours each during an eight-hour workday. AR 1156–57. He opined that Plaintiff could lift and carry less than 10 pounds occasionally. AR 1157. He opined that Plaintiff could rarely stoop, crouch, and climb. AR 1157–58. He opined that Plaintiff has significant manipulative limitations but did not indicate what

1    percentage of the time she could perform manipulative tasks. AR 1158. He further opined that
2    Plaintiff would be off-task 10% of the day and was incapable of even low stress jobs. AR 1158.

3    On June 11, 2018 Plaintiffs primary care physician, Dr. Fernandez, completed a medical
4    source statement diagnosing chronic back pain and depression. AR 1459. Although he did not list
5    cirrhosis as a diagnosis, he did list it under clinical findings and objective signs. AR 1459. He
6    noted that her chronic pain was well controlled with Percocet. AR 1459. He opined that Plaintiff
7    could walk no more than one block. AR 1459. As to the duration Plaintiff could sit and stand at
8    one time, he selected two conflicting responses, circling both five minutes and one hour. AR 1460.
9    He opined that Plaintiff could sit and stand/walk for less than two hours total in an eight-hour
10   workday. AR 1460. He opined that Plaintiff must elevate her legs while seated but did not indicate
11   how high they must be elevated, for what percentage of the time they must be elevated, or what
12   symptoms require elevation. AR 1460. He opined that Plaintiff could never lift or carry any weight,
13   could never crouch or climb, and could rarely twist and stoop. AR 1462. He further opined that
14   Plaintiff would be off-task at least 25% of the day, absent more than four days per month and would
15   not be capable of even low stress work. AR 1461.

16   On September 17, 2018, consultative examiner Dr. Rush conducted a physical evaluation
17   and opined that Plaintiff had no limitations of any kind. AR 1464–68. On September 24, 2018,
18   consultative examiner Dr. Murphy conducted a mental health evaluation and opined that Plaintiff
19   had no mental limitations. AR 1478–83. On November 12, 2015, non-examining agency physician
20   Dr. Bonner reviewed Plaintiff's file and opined that Plaintiff's severe cirrhosis was not
21   presumptively disabling under any Listing and that Plaintiff could perform a range of light work
22   with some postural limitations. AR 64–66. On March 25, 2016, non-examining agency physician
23   Dr. De la Rosa reviewed the updated record and concurred with Dr. Bonner's assessment. AR 93–
24   95.

25   **C.      Vocational Expert**

26   Vocational expert Dr. Brenda Cartwright (the "VE") testified at the administrative hearing.
27   AR 56–58. The ALJ questioned the VE regarding a hypothetical Spanish speaking individual of
28

Plaintiff's age, education, and work history who could perform a range of work at the light exertional level with some postural limitations. AR 56–57. The VE opined that such an individual could perform Plaintiff's past work as an agricultural produce sorter. AR 57. The VE further opined that the hypothetical individual could still perform Plaintiff's past work even if limited to simple routine tasks, but not if they would be off task 20% of the day, or if they would be absent from work two days in an average month. AR 57.[2]

**IV.     Standard of Review, Generally**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision

---

[2] An exhaustive recitation of Plaintiff's medical file is unwarranted in light of the Court's holding that the ALJ did not provide a sufficient analysis of Plaintiff's treating physicians' opinions. Accordingly, the Court will focus on the content of those opinions and the law governing the ALJ's analysis of the same.

for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V.     **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).  While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.    **The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of January 7, 2014. AR 23. At step two, the ALJ found that Plaintiff had the following severe impairments: cirrhosis of the liver, history of alcohol abuse, obesity, lumbar degenerative disc disease (DDD), portal hypersensitive gastropathy, and hepatic encephalopathy. AR 23. The ALJ found that Plaintiff's depression was non-severe. AR 24. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with some postural limitations. AR 26–32. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could perform her past relevant work as an agricultural produce sorter. AR 32. Accordingly, the ALJ found that Plaintiff was not disabled. AR 33.

## VII. Issues Presented

Plaintiff asserts two claims of error. Plaintiff contends that the ALJ erred in rejecting the opinions of her treating physician, Dr. Fernandez, and her treating gastroenterologist, Dr. Sheikh. Br. at 9–11. Secondly, Plaintiff contends that the ALJ erred in failing to consider the applicability of Listing 5.05 for hepatic encephalopathy with abnormal behavior. Br. at 7–9, Doc. 20. Because the Court finds that the ALJ did not provide sufficient reasoning for rejecting Plaintiff's treating physicians' opinions, and because Plaintiff's requested remedy is remand for further proceedings, the Court declines to address the Listing 5.05 issue.

### A. Applicable Law

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

**B.      Analysis**

Here, Drs. Fernandez and Sheikh's opinions that Plaintiff could perform less than sedentary work were contradicted by the opinions of consultative examiner Dr. Rush (who identified no limitations), and non-examining physician's Drs. Bonner and De La Rosa (who opined that Plaintiff could perform a range of light work). Accordingly, the ALJ was required to identify "specific and legitimate" reasons for rejecting those opinions. *Lester*, 81 F.3d at 831*; see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Plaintiff contends that the ALJ failed to meet this standard as to both treating physicians' opinions.

As to Dr. Fernandez, it is important at the outset to distinguish between his two opinions dated January 5, 2016 and June 11, 2018, respectively. On January 5, 2016, Dr. Fernandez submitted a letter stating as follows:

> To whom it may concern: This patient is currently under my care and was seen in my office on 1/05/2016. She suffers from chronic low back pain with resultant difficulty completing her ADL's but she also has Cirrhosis and Hepatic encephalopathy. Her cirrhosis is advanced which qualifies her for permanent disability so please approve her case . . .

AR 928. As this letter offered little more than Dr. Fernandez's conclusion that Plaintiff's condition "qualifies her for permanent disability," the ALJ appropriately dismissed it as an "opinion on an issue reserved to the Commissioner" which was not entitled to controlling weight or special treatment. *See* 20 CFR 404.1527(d) (noting that the ultimate issue of disability is reserved for the Commissioner, and opinions on that issue are not considered medical opinions nor are they given any special significance). Problematically, however, the ALJ appeared to dismiss Dr. Fernandez's June 11, 2018 Physical Medical Source Statement for the same reason, among others:

> The undersigned has considered and gives little weight to R. Fernandez, M.D., who made a disability statement on January 5, 2016 and filled out a physical residual functional capacity questionnaire on June 11, 2018 (Exhibits 5F, 6F and 23F). The undersigned *has given little weight to this opinion* because it is not supported by objective evidence and it is inconsistent with the record as a whole. *As an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance* pursuant to 20 CFR 404.1527(d) and 416.927(d) and SSR 96-5. Dr. Fernandez primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but did not provide objective clinical or diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision, which show many normal physical examinations. This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision. Therefore, this is given little weight.

AR 31 (emphasis added). After introducing the two opinions in the first sentence, the ALJ referred back to "this opinion" and "this statement" without indicating which one she was referring to. Thus, the ALJ's decision is incorrect insofar as it can be read as stating that the Physical Medical Source Statement is an opinion on an issue reserved to the Commissioner, and therefore entitled to no special treatment. In contrast to the disability letter dated January 5, 2016, the Physical Medical

Source Statement contains answers to a myriad of factual questions regarding the claimant's functionality, not just a conclusion on the ultimate issue of disability.

The ALJ provided additional reasoning for discounting Dr. Fernandez's Physical Medical Source Statement, namely that "Dr. Fernandez primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but did not provide objective clinical or diagnostic findings to support the functional assessment." AR 31. It is unclear which "treatment notes" the ALJ was identifying as deficient. There are innumerable treatment notes from Plaintiff's encounters with Dr. Fernandez throughout the nearly 1500-page Administrative Record, but the ALJ's analysis of Dr. Fernandez's opinion identified no records specifically by page citation, exhibit number, encounter date, time period, content, or otherwise. Thus, the Court is in no position to evaluate the ALJ's criticism of Dr. Fernandez's allegedly insufficient treatment notes, and the ALJ's general reference to the same is not sufficiently specific. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (finding generalized references to "treatments notes" insufficient absent any effort to identify the content of the same).

To the extent the ALJ's above-quoted critique was intended to apply to Dr. Fernandez's narrative responses in the Physical Medical Source Statement itself, rather than his treatment notes attached elsewhere in the administrative record, the ALJ's reasoning is still not sufficiently clear. Under "clinical findings and objective signs" Dr. Fernandez wrote "chronic pain, cirrhosis, depressive disorder." AR 1459. Although this was not a particularly detailed explanation, cirrhosis and depressive disorder do appear to be objective diagnoses, not subjective complaints.[3]

---

[3] The Court did note a number of idiosyncrasies and/or potential deficiencies in Dr. Fernandez's opinion, none of which were identified by the ALJ. These include: 1) Dr. Fernandez entered "cirrhosis" under "clinical findings," but omitted it under "diagnoses"; 2) he left the "prognosis" section blank; 3) he noted that her chronic pain was well controlled with Percocet (which is arguably inconsistent with the notion that the pain was debilitating); 4) as to the duration Plaintiff could sit and stand at one time, he selected two conflicting responses, circling both five minutes and one hour; 5) he opined that Plaintiff must elevate her legs while seated but did not indicate how

9

The ALJ also discounted Dr. Fernandez's opinion because it was inconsistent with "the objective findings already discussed above in this decision." AR 31. Plaintiff appropriately argues that this general reference to the ALJ's lengthy factual summary set forth earlier in the decision is not sufficiently specific. Although an ALJ need not compare and contrast each and every piece of medical and testimonial evidence in the record to each corresponding assessment in a physician's opinion, the "specific and legitimate" standard requires a bit more than a generalization that the physician's opinion is inconsistent with the ALJ's preceding factual summary. The ALJ ought to identify some representative example(s) of such an inconsistency. *See Klev v. Astrue,* No. CIV S-11-0863 GGH, 2012 WL 3728040, at *6 n.4 (E.D. Cal. Aug. 24, 2012) ("While the ALJ's summary of the evidence was thorough, it was merely that, a summary of the medical evidence. The court cannot guess which portion of the seven pages referenced by defendant were meant to provide the specific and legitimate reasons supporting the decision.").

Finally, the ALJ rejected Dr. Fernandez's opinion as inconsistent with "the claimant's admitted activities of daily living that have already been described above in this decision." AR 31. This generalized reference to the ALJ's summary of Plaintiff's daily activities is insufficient because the ALJ did not identify which activities she was referencing, or to what aspect of the doctor's opinion was undermined by those activities. *See Melissa C. v. Commissioner, Soc. Sec. Admin*, No. 3:19-CV-01951-MK, 2020 WL 7770897, at *6 (D. Or. Dec. 30, 2020) ("Critically, the ALJ did not identify which portions of the doctor's opinion conflicted with Plaintiff's limited daily activities.").

Although the ALJ did summarize Plaintiff's daily activities earlier in her decision (i.e. not in the section analyzing the treating physicians' opinions), the evidence the ALJ identified does not

---

high they must be elevated, for what percentage of the time they must be elevated, or what symptoms require elevation. AR 1459–60. Again, the ALJ did not highlight any of these issues.

appear inconsistent with the physicians' conclusions regarding Plaintiff's functionality. For example, the ALJ identified that Plaintiff "goes to church, visits with her daughter every day, and washes dishes." AR 27.  However, Plaintiff testified that she did not go out to visit her daughter. AR 47.  Rather, her daughter came over to visit her which does not indicate much about Plaintiff's functionality.  AR 47.  Although Plaintiff testified that she did dishes, she indicated that she did so while seated.  AR 55.

The ALJ also cited Plaintiff's adult function report, but she primarily focused on Plaintiff's self-reported mental and social functioning, which does not undermine Plaintiff's physicians' conclusions about her physical functional capacity. *See* AR 27 (citing AR 346).  Indeed, as to physical functional capacity the adult function report seems to cut the opposite way. *See* AR 347 ("Most of the day I spent seating and in bed due to the pain and dizziness.").

Finally, the ALJ noted that Plaintiff reported certain daily activities to consultative examiner Dr. Lewis, such as performing chores.  AR 27.  The limited notes in Dr. Lewis's report, however, provide no contextual information such as how frequently Plaintiff did such chores or for how long she was able to do so before resting. Thus, there is no obvious inconsistency between the Plaintiff's reported daily activities and her physicians' assessed limitations.  Accordingly, without an explanation by the ALJ as to what specifically she believed the inconsistency to be, the ALJ's reference to Plaintiff's daily activities is not a specific and legitimate reason for discounting the treating physicians' opinions.

As to Dr. Sheik's opinion (Plaintiff's gastroenterologist), the ALJ provided essentially identical reasoning for rejecting that opinion as she did for rejecting Dr. Fernandez's opinion:

> The undersigned has considered and gives little weight to M. Sheikh, M.D., who filled out a physical residual functional capacity questionnaire on February 1, 2018 (Exhibit 13F).  The undersigned has given little weight to this opinion because it is not supported by objective evidence and it is inconsistent with the record as a whole. Dr. Sheikh primarily summarized in the treatment notes the claimant's subjective complaints, diagnoses, and treatment, but did not provide objective clinical or

> diagnostic findings to support the functional assessment. This opinion is inconsistent with the objective findings already discussed above in this decision, which show no more than moderate findings. This opinion is also inconsistent with the claimant's admitted activities of daily living that have already been described above in this decision. Therefore, this is given little weight.

AR 31.

This explanation is inadequate for the same reasons identified above. Moreover, this critique appears even less applicable to Dr. Sheikh's opinion, as Dr. Sheikh provided more thorough explanations than Dr. Fernandez. In describing Plaintiff's diagnoses, symptoms, prognosis, clinical findings and objective signs, Dr. Fernandez recited "cirrhosis, chronic pain, and depressive disorder." Dr. Sheikh, by contrast, explained that Plaintiff had "end stage liver disease," to wit: "alcoholic cirrhosis complicated by fluid overload and mild hepatic encephalopathy along with fatigue," he explained that her prognosis was "poor without liver transplantation," that she suffers from joint pain, fatigue, and mental confusion, and identified "imaging studies and clinical exam supporting cirrhosis." AR 1157–59. The fact that the ALJ provided identical reasoning for rejecting Dr. Sheik's opinion as she did for rejecting Dr. Fernandez's opinion tends to indicate that the ALJ used standard boilerplate language to address both opinions irrespective of their individual content. Boilerplate language is not sufficiently specific. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (noting that the specific and legitimate reasoning standard is not satisfied where the ALJ uses "boilerplate language that fails to offer a substantive basis for his conclusion.").

**VIII. Conclusion and Remand for Further Proceedings**

For the reasons explained above, the Court finds that the ALJ's analysis of the treating physicians' opinions was inadequate, and remand is therefore appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

12

### IX. Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion. Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The Clerk of Court is directed to enter judgment in favor of Plaintiff Anabel Duran Deleon, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **January 6, 2021**          **/s/ Gary S. Austin**
                                      UNITED STATES MAGISTRATE JUDGE